518 So.2d 298 (1987)
Joseph Andrew BRIDGES, Petitioner,
v.
Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent.
No. 87-2245.
District Court of Appeal of Florida, Second District.
November 6, 1987.
Joseph Andrew Bridges, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for respondent.
*299 PER CURIAM.
Joseph Bridges petitions this court for a writ of habeas corpus. We deny the petition.
In 1980 Bridges was charged with two counts of robbery with a firearm, two counts of kidnapping, one count of robbery, and one count of attempted robbery. A plea agreement was negotiated whereby Bridges would be sentenced to "less than the maximum on each charge." On January 7, 1981, Bridges was sentenced to twenty-five years on each count, those sentences to run concurrently. The trial court made a specific finding that Bridges was a habitual felony offender.[1] Bridges claims that this, enhancement provision violated the terms of the plea agreement because, due to the operation of section 775.084, certain of the sentences exceeded the statutory maximum. He also claims that the trial court failed to conduct an adequate hearing on the necessity for habitual offender treatment as required by law. Finally, Bridges states that he made his dissatisfaction known to counsel at the time of sentencing and asked counsel to file an appeal, but that counsel failed to do so. Only the last of these complaints is appropriately raised in a petition for habeas corpus. The failure to appeal a conviction and sentence, even though a timely request has been made, generally constitutes ineffective assistance of counsel remediable by habeas corpus brought in the court having appellate jurisdiction over the case. State v. Meyer, 430 So.2d 440 (Fla. 1983).
Prior to the Meyer decision, whenever it could be demonstrated that a public defender neglected to appeal a conviction despite a request from his client, a belated appeal was authorized on the theory counsel's inaction constituted "state action." Baggett v. Wainwright, 229 So.2d 239 (Fla. 1969). One flaw with this reasoning was pointed out by the appellee in Avera v. State, 417 So.2d 804 (Fla. 5th DCA 1982), who argued that the extension of Baggett to defense counsel effectively abolished the jurisdictional time limit for filing a notice of appeal in criminal cases and replaced it with a "suggestion" that counsel file his notice within thirty days. Secondly, in light of Polk County v. Dodson, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), it became questionable whether a public defender, as an advocate for the accused operating as an adversary of the state, should be considered to function under color of state law. As a result the supreme court, in Meyer, found no logical basis for imputing the actions of court-appointed counsel to the state. Instead, the court held that omissions such as the failure to file a notice of appeal were better remedied by collateral attack based upon ineffective assistance, discipline by the Florida Bar, or even suits for money damages.[2]
A criminal defendant claiming to have received ineffective assistance of counsel must satisfy a two-pronged test. First, the specific omission of counsel must be identified. In the situation presented by the present case that is rather easily done: the omission is the failure to invoke the jurisdiction of the appellate court by filing the necessary notice. Second, the movant must show that counsel's deficient performance prejudiced the outcome of the case. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). *300 Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard applies to complaints against appellate counsel as well as against trial counsel. See, e.g., Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985). It can be argued that this second prong has never been fully explored or elucidated in the context of ineffective appellate counsel claims based on the failure to appeal at all.
We have not heretofore required that a petitioner seeking belated appellate review demonstrate any probability of success on appeal. Conceivably, such a requirement would run afoul of the principles set forth in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). See also, Rodriguez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); Baggett. In Anders the court held that an indigent defendant's right to meaningful appellate review was not satisfied by a brief, unspecific "no merit letter" filed by counsel. Instead, the court held that the right imposes additional responsibilities upon both counsel and the court to examine the record and determine the presence, if any, of arguably meritorious issues. Although a defendant, upon receipt by the court of an Anders brief, is given the opportunity to file a supplemental brief if he desires, the court's responsibility to review the record is not contingent upon the defendant's affirmative election to go forward by arguing issues on his own behalf. If an attorney cannot unilaterally terminate the appeal process solely on the basis of his unsubstantiated conclusion that the appeal is frivolous, it is difficult to imagine that he could legitimately refuse even to file a notice of appeal in a case where he believed no reversible error had occurred. Permitting counsel to accept sole responsibility for this decision places him perilously close to the role of amicus curiae disavowed by Anders.[3] We, therefore, are disinclined to impose further restrictions upon defendants seeking relief from their attorneys' failure to appeal than the supreme court appears to have done in Meyer or Baggett.
Bridges's problem, however, is even more fundamental in that he cannot show that he would have had a right to appeal at all. Bridges entered a plea of guilty without reserving any appellate issues, received a sentence that is facially legal and which was accepted without contemporaneous objection, and did not move to withdraw that plea prior to the imposition of a sentence which on its face is lawful. Accordingly, even if a notice of appeal had been filed the appeal could have been subject to dismissal. See, e.g., Jones v. State, 468 So.2d 253 (Fla. 2d DCA 1985); Taylor v. State, 453 So.2d 483 (Fla. 2d DCA 1984); Counts v. State, 376 So.2d 59 (Fla. 2d DCA 1979). In such a situation it is manifestly clear that even had counsel done as Bridges argues he was obliged to do, this would have absolutely no effect upon Bridges' chances for redress of his grievances.
Furthermore, a review of the history of this case leads us to conclude that the issue Bridges believes is remediable by appeal has already been decided to his detriment. On December 10, 1983, Bridges filed a motion for postconviction relief in the circuit court, primarily concerned with a claim of ineffective assistance of counsel. Among the specific allegations were claims that counsel had promised Bridges that his sentence would not be imposed under the habitual offender statute and that he would be paroled in eight years. The circuit court conducted an evidentiary hearing at which both trial counsel and Bridges testified. Although counsel could not recall the substance of all his private discussions with Bridges, Bridges himself admitted that counsel had not guaranteed a parole release date. As stated in the brief later submitted by Bridges's appellate counsel, "the real crux of [Bridges's] allegation is *301 whether he was or wasn't promised that he wouldn't be habitualized." Although this dispute does not appear to have been fully resolved, the circuit court appears to have been persuaded by the state's argument that Bridges "understood he would receive twenty-five years [and] got exactly what he bargained for." The twenty-five year sentence imposed for armed robbery and kidnapping is less than the maximum penalty for those offenses, and therefore within the confines of the plea agreement. The only practical effect upon Bridges from the trial court's choice of disposition was to enhance what otherwise would have been a maximum sentence of fifteen years for robbery and attempted armed robbery, a sentence which, insofar as it ran concurrently with the sentences imposed for the other charges, added nothing to the total length of time to be served. The circuit court denied Bridges's motion and this court affirmed on appeal. Bridges v. State, 474 So.2d 218 (Fla. 2d DCA 1985).
Bridges filed a second motion for postconviction relief November 24, 1986. Again he argued that his plea agreement had been violated by virtue of the operation of the habitual offender statute. The circuit court denied relief on the grounds this was Bridges' second motion and therefore constituted an abuse of procedure, and we affirmed. Bridges v. State, 502 So.2d 428 (Fla. 2d DCA 1987). We see no reason to disavow that finding. Witt v. State, 465 So.2d 510 (Fla. 1985); Tanner v. State, 502 So.2d 1008 (Fla. 2d DCA 1987). It is clear, therefore, that even if we now permitted Bridges a direct appeal from the judgment and sentence the precise remedy he seeks could not be provided in that manner. In order to vacate a sentence which he feels violates a plea agreement, a prisoner must seek to withdraw the plea, which Bridges has twice done without success.
Petition denied.
DANAHY, C.J., and SCHOONOVER and HALL, JJ., concur.
NOTES
[1] § 775.084 Fla. Stat. (1979).
[2] In practical terms, proceedings brought pursuant to Meyer have not differed from those under Baggett, at least in this court. When a facially sufficient Meyer habeas petition is received, our general practice is to solicit a response from the state and, if the facts are uncontested, permit belated appellate review. Occasionally it becomes necessary to associate a judge from the appropriate circuit to act as commissioner and take testimony regarding the merits of the petition. We have not, as of this writing, also undertaken substantial efforts toward disciplining those attorneys whose inaction has prompted the petition, which is not to suggest that we will never do so. We perceive a difference, ethically, between the attorney who simply refuses to file a notice of appeal although requested to do so, or who affords his client measurably inadequate advice regarding his appellate rights, and one whose client inadvertently has failed to appreciate those rights and who reasonably, but mistakenly, believes counsel understands his desire to appeal.
[3] The "no merit" letter is qualitatively different than the statement of judicial acts filed in McGinty v. State, 463 So.2d 495 (Fla. 2d DCA 1985), pointing out to the court that the appellant had been convicted upon a plea of guilty, that no viable issue had been preserved for appellate review, and thus that the appeal was subject to dismissal. Although all public defenders practicing before this court were not in agreement on this practice, we found it an appropriate means of disposing of such unnecessary appeals. "In doing this, the appellate attorney has served the client's interest by assisting the court in channelling a claim where it can be heard on the merits." 463 So.2d at 496.