706 So.2d 332 (1998)
Ronald TROWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 95-3082.
District Court of Appeal of Florida, First District.
January 20, 1998.
*333 Nancy A. Daniels, Public Defender, P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, James W. Rogers, Senior Assistant Attorney General, Tallahassee, for Appellee.

ON REHEARING EN BANC
ERVIN, Judge.
Ronald Trowell appeals the denial of his motion, filed pursuant to Florida Rule of Criminal Procedure 3.850, for post-conviction relief and belated appeal of the judgment of conviction based upon his guilty plea to armed burglary and first-degree murder. As grounds therefor, appellant alleged that his court-appointed counsel (1) failed to honor his request to call witnesses to testify on his behalf before entry of the plea, (2) failed to raise an objection that appellant was under the influence of medication at the time of the plea, and (3) failed to file a notice of appeal, contrary to his request. Grounds one and two of the motion allege insufficient facts to state a basis for relief. Therefore, we affirm the trial court's order with respect to these claims without further discussion. We reverse, however, the lower court's ruling on appellant's claim of entitlement to a belated appeal.
In denying the defendant's motion for belated appeal, the trial court cited Thomas v. State, 626 So.2d 1093 (Fla. 1st DCA 1993), and concluded that the defendant was not entitled to an appeal, because he had entered into a negotiated guilty plea for a life sentence and waived his right to appeal the matters relating to the judgment. We cannot agree.
The court's decision in Thomas is inconsistent with a substantial body of case law from this court and other district courts of appeal. See, e.g., Moore v. State, 661 So.2d 921 (Fla. 1st DCA 1995); Kiser v. State, 649 So.2d 333 (Fla. 1st DCA 1995); Owens v. State, 643 So.2d 105 (Fla. 1st DCA 1994); Clayton v. State, 635 So.2d 48 (Fla. 1st DCA 1994); Hudson v. State, 596 So.2d 1213 (Fla. 1st DCA 1992); Short v. State, 596 So.2d 502 (Fla. 1st DCA 1992); Courson v. State, 652 So.2d 512 (Fla. 5th DCA 1995); Gunn v. State, 612 So.2d 643 (Fla. 4th DCA 1993), on remand, 643 So.2d 677 (Fla. 4th DCA 1994); Viqueira v. Roth, 591 So.2d 1147 (Fla. 3d DCA 1992). To the extent that Thomas requires a defendant to state in a rule 3.850 motion for belated appeal what issues he or she would have raised on appeal, and whether or how those issues would have been dispositive, or how appellant was otherwise prejudiced by his counsel's failure to file a notice of appeal, we recede from it as being contrary to controlling precedent from this court and the Florida Supreme Court.
The Florida Supreme Court addressed the reason why a defendant need not state meritorious issues in a 3.850 motion as a precondition to his or her right to a belated appeal *334 from a criminal conviction in Baggett v. Wainwright, 229 So.2d 239 (Fla.1969). In that case, the court devised the following procedure to determine one's eligibility to a belated appeal. The defendant was required to file a petition for writ of habeas corpus before the appropriate appellate court,[1] wherein only two issues were pertinent for resolution: first, did the defendant, if aware of his or her right to appeal, timely express the desire to appeal to the court, defense attorney or other appropriate person, and second, did the facts show a deprivation, through state action, of this right guaranteed to the defendant?[2]Id. at 241.
In outlining this process, the court specifically rejected the state's contention that the defendant must make a preliminary showing of arguable points on the merits in order to be entitled to an appeal. In so doing, it relied on Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), wherein the United States Supreme Court had rejected a similar argument. The Baggett court relied not only on Rodriquez, but also on two other Supreme Court decisions, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), dealing with an indigent defendant's right to appeal.
The facts in Rodriquez disclose that the indigent prisoner had filed a motion for postconviction relief under 28 U.S.C. § 2255, the federal counterpart to Florida Rule of Criminal Procedure 3.850, seeking a belated appeal, alleging that his retained counsel had fraudulently deprived him of his right to appeal. After the Ninth Circuit Court of Appeals affirmed the trial court's denial of the requested relief for the reason that the motion, contrary to its rule, failed to disclose what errors the petitioner would have raised on appeal, the Supreme Court granted certiorari and reversed the order of denial. In reaching its decision, the Court noted that an appeal from a criminal judgment of conviction is a matter of right. It also emphasized the disparity in legal ability which exists between a pro se litigant and a defendant with funds represented by a retained lawyer, observing:
Those whose education has been limited and those, like petitioner, who lack facility in the English language might have grave difficulty in making even a summary statement of points to be raised on appeal. Moreover, they may not even be aware of errors which occurred at trial. They would thus be deprived of their only chance to take an appeal even though they have never had the assistance of counsel in preparing one.... [T]he Ninth Circuit's requirement makes an indigent defendant face "the danger of conviction because he does not know how to establish his innocence." Moreover, the Ninth Circuit rule would require the sentencing court to screen out supposedly unmeritorious appeals in ways this Court rejected in Coppedge [v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962)]. Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings. Accordingly, we hold that the courts below erred in rejecting petitioner's application for relief because of his failure to specify the points he would raise were his right to appeal reinstated.
Rodriquez, 395 U.S. at 330, 89 S.Ct. at 1717, 23 L.Ed.2d at 344 (emphasis added).
As the Court's analysis makes clear, there should be no difference between a defendant's right to a belated appeal, if the evidence discloses that the delay was not attributable *335 to his or her own neglect, and the right to a timely appeal, insofar as any requirement that the defendant make a preliminary showing of merit. In both cases, a statement of meritorious issues is irrelevant to one's entitlement to appeal. Similarly, there should be no difference between a defendant's right to a belated appeal from a conviction following trial or after a plea, because, in either instance, if the appeal had been timely filed, an initial statement of arguable points would be irrelevant to the right to appeal.
Although Baggett involved a belated appeal following a jury trial, the opinion makes clear, with its references to Anders and Douglas, and its specific adoption of Rodriquez, that a defendant need not make a merit showing in order to seek a belated appeal from a conviction based on either a plea or verdict of guilt. Indeed, if the Florida Supreme Court had made the distinction the lower court approved below, its decision would have been at clear variance with the broad constitutional precepts announced in Rodriquez, Douglas and Anders.
In Douglas, the court held that an indigent prisoner was entitled to the assistance of counsel on appeal, that the due process and equal protection clauses of the Fourteenth Amendment demanded no less, and that a state could not deny the indigent such right by requiring him or her to make a preliminary showing of merit. In vacating the judgment of the California appellate court, which had denied the defendant the assistance of counsel on appeal because it had gone through the record and come to the conclusion that "no good whatever could be served by appointment of counsel," the United States Supreme Court made the following pertinent comments:
The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between "possibly good and obviously bad cases," but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.

Douglas, 372 U.S. at 357-58, 83 S.Ct. at 816, 9 L.Ed.2d at 815 (emphasis added).
The Court applied the same reasoning in another case decided the same day, wherein it was asked whether due process was offended by the state of Washington's practice of denying a transcript of the record at public expense to an indigent appellant, based upon a trial court's findings that the assignments of error were, in its judgment, frivolous and the evidence of guilt overwhelming. In striking down the practice of allowing the trial court to be virtually the sole arbiter of whether the appeal had merit, the Court explained:
In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with fundsthe State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions.
Draper v. Washington, 372 U.S. 487, 496, 83 S.Ct. 774, 779, 9 L.Ed.2d 899, 906 (1963).
Four years later in Anders, the United States Supreme Court established the procedure to be followed once appellate counsel has been appointed and counsel determines that the appeal is frivolous. In order to protect an appellant's constitutional rights to a fair trial and the assistance of counsel for his or her defense, counsel who makes a representation of no merit may request permission to withdraw and must accompany the request with a brief referring to anything in the record that might support the appeal. A copy of the brief must be served on the indigent, and time allowed for him or her to raise any points that he or she chooses. *336 Thereafter, the appellate court "proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Anders, 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498 (emphasis added).
Aware that Baggett had bottomed its holding on constitutional pronouncements of the United States Supreme Court which emphasized that the Fourteenth Amendment proscribes disparate treatment of indigent and wealthy defendants in regard to their right to appeal, the district courts of appeal in Florida routinely, until 1987, when confronted with petitions for writs of habeas corpus, designated commissioners to determine the truthfulness of the defendants' representations that they had been denied a right to appeal upon timely request. In so proceeding, the courts' opinions made no distinction whether the conviction was based upon a plea or a finding of guilt following trial.
The first apparent departure from established precedent occurred in Bridges v. Dugger, 518 So.2d 298 (Fla. 2d DCA 1987), in which the Second District Court of Appeal denied a petition for writ of habeas corpus on the ground that the petitioner had entered a plea of guilty without reserving any appellate issues, had received a sentence that was facially legal, which was accepted without contemporaneous objection, and had not moved to withdraw the plea before imposition of sentence. In reaching its decision, the court recognized the applicability of the United States Supreme Court's decisions in Anders and Rodriquez, as well as the Florida Supreme Court's decision in Baggett; yet, with little analysis, it concluded, as had the state courts whose judgments were vacated in Douglas and Draper, that the appeal would be frivolous. Several more recent appellate decisions have taken the same approach as the court in Bridges. See, e.g., Thomas v. State, 626 So.2d 1093 (Fla. 1st DCA 1993); Gonzalez v. State, 685 So.2d 975 (Fla. 3d DCA 1997); Loadholt v. State, 683 So.2d 596 (Fla. 3d DCA 1996); Zduniak v. State, 620 So.2d 1083 (Fla. 2d DCA 1993).
Bridges and its progeny are based primarily on Robinson v. State, 373 So.2d 898 (Fla. 1979),[3] wherein the Florida Supreme Court held that a valid guilty plea waives the right to appeal all issues arising before the entry of the plea. The court nonetheless noted a few limited exceptions which may be appealed regardless of the entry of a plea, such as (1) lack of subject matter jurisdiction, (2) illegality of the sentence, (3) failure of the state to abide by the plea agreement, and (4) the voluntary and intelligent nature of the plea. Id. at 902.[4]
We note, however, that when the Florida Supreme Court revisited the procedure for obtaining belated appeals in State v. District Court of Appeal, First District, 569 So.2d 439 (Fla.1990), the court left intact Baggett's pronouncement rejecting any requirement of meritorious grounds for appellate relief as a condition precedent to one's right to appeal, despite the existence of Robinson. Moreover, the opinion made no distinction between appeals from convictions following pleas or verdicts of guilt. Indeed, nothing in the opinion discloses whether the request for an appeal had followed a trial or a plea.
More recently, the Florida Supreme Court again addressed the procedure for obtaining belated appeals in Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773 (Fla.1996) (on reh'g). The court considered chapter 96-248, section 4, at 954, Laws of Florida, creating section 924.051, Florida Statutes (Supp.1996), which purported to preclude a defendant who has pled nolo contendere or guilty without expressly reserving his or her right to appeal a legally dispositive issue from appealing his or her judgment and sentence. The court concluded that the new statute does not foreclose a defendant who has entered a plea from appealing the limited exceptions set forth in Robinson. Id. at 774-75. Moreover, we note that in adopting the revisions to Florida Rule of Appellate Procedure *337 9.140(j), dealing with petitions for belated appeal, the court included Committee Notes indicating that the revision was intended to reinstate the procedure set forth in Baggett. Id. at 807.
Based on our reading of Baggett and Amendments to the Florida Rules of Appellate Procedure, we are of the firm belief that the only relevant inquiry, once a request for a belated appeal is made, is whether the defendant was informed of his or her right to an appeal and thereafter timely made a request for an appeal to his or her attorney or other appropriate person. If the appeal proceeds from the entry of an unconditional guilty or nolo contendere plea, it may, due to appellant's failure to submit any issue cognizable under Robinson, eventually result in dismissal by an appellate court, but issues of merit are not required as a precondition to the appeal. Any procedure to the contrary is a clear violation of the constitutional requirements of substantial equality and fair process for the indigent and affluent alike, under Rodriquez, Douglas and Anders.[5]
In so saying, we consider that the procedure the lower court approved compounds the practical difficulties confronting any pro se litigant attempting to marshal legal issues necessary to entitle him or her to the "one and only appeal an indigent has as of right" from a conviction. Douglas, 372 U.S. at 357, 83 S.Ct. at 816, 9 L.Ed.2d at 814. Moreover, it runs contrary to the continuing concern expressed in the relevant United States Supreme Court decisions, e.g., Rodriquez, Douglas, Draper and Anders, recognizing that an affluent defendant who has the means to secure counsel to perfect an appeal is not required to state meritorious issues as a precondition to such appeal; while an indigent, who cannot personally retain an attorney, is required to file issues of merit before his or her appeal may be perfected. The Supreme Court has continuously rejected such disparate treatment.
Although it may be difficult for us to determine from this record what chance the defendant may have for success on the merits, any such uninformed prognosis is not the proper test of one's entitlement to an appeal. As observed in Penson v. Ohio, 488 U.S. 75, 87, 109 S.Ct. 346, 353-54, 102 L.Ed.2d 300, 313 (1988) (footnote omitted): "Mere speculation that counsel would not have made a difference is no substitute for actual appellate advocacy, particularly when the court's speculation is unguided by the adversary process." Moreover, the "`[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.'" Id. at 88, 109 S.Ct. at 354, 102 L. Ed.2d at 313 (quoting Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984)).
We note that the procedure the lower court endorsed, if approved, could ultimately result in the denial of Trowell's only right to a direct appeal, to which he would otherwise have been entitled had the appeal been timely filed, together with his right to the aid of an attorney. The uncounseled defendant at bar, as the defendant in Rodriquez, "may not even be aware of errors which [may have] occurred." Rodriquez, 395 U.S. at 330, 89 S.Ct. at 1717, 23 L.Ed.2d at 344.
Finally, such procedure is, in fact, no less offensive to due process than the situations which transpired in Rodriquez, Douglas and Anders, because Trowell's court-appointed trial counsel has apparently conceded that Trowell requested him to file an appeal immediately following the entry of his plea and *338 sentence. In his response to the motion for relief, trial counsel replies merely that because Trowell's conviction was the product of a plea-bargain agreement, and the plea was freely given, "the failure to honor the timely request for an appeal is inconsequential." Thus, the only difference between the practice the United States Supreme Court rejected in Anders and that which the court below appears to sanction is that the trial attorney may trump the Anders procedure by declaring his client's appeal to be of no merit because it followed an unconditional guilty plea. Consequently, the defendant, thereafter unassisted by counsel, must first file sufficiently stated errors before his appeal may proceed; a procedure which would be entirely irrelevant to his appellate rights if his lawyer had simply honored his client's request and filed the notice.
Nevertheless, because our decision today conflicts with Bridges v. Dugger, 518 So.2d 298 (Fla. 2d DCA 1987), and its progeny, Gonzalez v. State, 685 So.2d 975 (Fla. 3d DCA 1997); Loadholt v. State, 683 So.2d 596 (Fla. 3d DCA 1996); and Zduniak v. State, 620 So.2d 1083 (Fla. 2d DCA 1993), we certify our conflict therewith.
In that Trowell's trial attorney has not denied that his client timely requested him to file an appeal, we reverse the order of denial as it relates to this issue. In light of the revisions the Florida Supreme Court made to Florida Rule of Appellate Procedure 9.140(j)(1), effective January 1, 1997, which provides that petitions seeking belated appeal shall be filed in the appellate courts, we now construe Trowell's motion as a petition for belated appeal properly filed with this court pursuant to the rule. We grant the petition and direct the clerk of this court to file an order in the Circuit Court of Columbia County in accordance with rule 9.140(j)(5)(D). We also relinquish jurisdiction to the trial court to determine whether Trowell is indigent and entitled to the appointment of counsel for the appeal.
AFFIRMED in part and REVERSED in part.
ALLEN, MICKLE, DAVIS, BENTON, VAN NORTWICK and PADOVANO, JJ., concur.
WEBSTER, J., concurs with written opinion, in which BARFIELD, C.J., ALLEN, VAN NORTWICK and PADOVANO, JJ., concur.
BOOTH, J., dissents without written opinion.
JOANOS, J., dissents with opinion, in which BOOTH, MINER, WOLF and KAHN, JJ., concur.
MINER, J., dissents with opinion, in which BOOTH, JOANOS, WOLF and KAHN, JJ., concur.
WOLF J., dissents with opinion, in which BOOTH and MINER, JJ., concur.
KAHN, J., dissents with opinion, in which BOOTH, MINER and WOLF, JJ., concur.
LAWRENCE, J., recused.
WEBSTER, Judge, concurring.
Long ago, our supreme court acknowledged that:
The constitutional right of equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon others in a like situation.
Equal protection of the laws means subjection to equal laws applying alike to all in the same situation.
State v. Bryan, 87 Fla. 56, 63, 99 So. 327, 329 (1924) (citation omitted). The rule advocated by the dissenters would create two classes those whose attorneys honored their request to file a notice of appeal, who need not satisfy any further condition to prosecute their appeal; and those, like appellant, whose attorneys did not honor their request to file a notice of appeal, who, solely because of their attorneys' dereliction, must overcome an additional hurdle before they will be permitted to prosecute their appeal. I can perceive no rational basis for such disparate treatment. For this reason, it seems to me that those who, like appellant, would fall into the second *339 class would be denied their constitutional right to equal protection of the laws. Accordingly, I concur.
JOANOS, Judge, dissenting.
The majority has lost sight of what this case is about. The trial court has not deprived Ronald Trowell of the right to counsel. Trowell was fully represented. Nor has the trial court treated Trowell any differently than it would have treated the wealthiest of defendants.
This case is about a plea of guilty. When Trowell pled guilty, he knowingly waived most of his right to an appeal. Plainly and simply, he had no remaining right to appeal his conviction unless he asserted one of the few remaining reasons open to him for appeal. If Trowell had a reason to appeal on one of the grounds still open to him, he should have stated as much in his petition to the trial judge. If he had told his trial lawyer that he wanted to raise one of those issues, his trial counsel would have been obligated to appeal. Trowell was under the same standard then as now. No magic words are necessary, no money is necessary; then, he should have told his trial counsel, now, he should tell the court, what it is he wanted to appeal. If he wanted to raise an appealable reason, he will not only be allowed to appeal, but will have the full services of an attorney and everything necessary to have this court review that appeal. Until he can raise one of the issues still open to him, he has no right to an appeal. That is a consequence of pleading guilty.
Trowell pled guilty to the first degree murder of his wife, and to burglary while armed, pursuant to a plea agreement. In his written offer of a plea, Trowell specifically stated that he understood that by pleading guilty, he gave up the "the right to appeal the matters relating to the judgment." The trial judge accepted the plea of guilty, only after making the required determinations that the plea was entered knowingly and voluntarily. After receiving a negotiated sentence, Trowell alleged in the motion here under review, that he asked his attorney to appeal. He has not indicated in any way what it was that he wanted his attorney to appeal. Despite this omission, the majority of this court has determined that Trowell's attorney was ineffective for telling him that "there was no need to appeal," and for failing to appeal. Contrary to the majority view, if counsel had taken an appeal without an appropriate reason, it would have been completely improper. In Robinson v. State, 373 So.2d 898, 903 (Fla.1979), the supreme court, through Justice Overton, stated unequivocally: "There is clearly no authority to seek an appellate review upon unknown or unidentified grounds, and it is improper to appeal on grounds known to be nonappealable."
In Robinson, our supreme court clearly set out Florida law on this subject. In that case, the court dealt with the same issue which confronts us here, "the right of appeal which exists from a guilty plea." 373 So.2d at 901. In that case, our supreme court ruled that "[o]nce a defendant enters a plea of guilty, the only points available for an appeal concern actions which took place contemporaneously with the plea," and that "[a] plea of guilty cuts off any right to an appeal from court rulings that preceded the plea in the criminal process including independent claims relating to deprivations of constitutional rights that occur prior to the entry of the guilty plea." 373 So.2d at 902.
The court then enumerated the "exclusive and limited class of issues which occur contemporaneously with the entry of [a guilty] plea that may be the proper subject of an appeal." These issues are: (1) the subject matter jurisdiction, (2) the illegality of the sentence, (3) the failure of the government to abide by the plea agreement, and (4) the voluntary and intelligent character of the plea. 373 So.2d at 902. The supreme court concluded the Robinson case with an affirmation of the dismissal of an appeal by the district court of appeal, because no appropriate ground for appeal had been raised.
The majority's view makes no distinction between a defendant who was convicted after a trial and one who pled guilty. In its opinion, the majority states, "there should be no difference between a defendant's right to a belated appeal from a conviction following trial or after a plea, because, in either instance, if the appeal had been timely filed, an initial statement of arguable points would be *340 irrelevant to the right to appeal." This view directly conflicts with Robinson.
The majority opinion obliterates the difference between the right to a trial and the right to an appeal. Every accused has the right to a trial, and that has been the law from this country's beginnings. Every accused has the right to have the voluntariness of a plea reviewed, and has had such right for a long time. However, the law also is that a defendant who pleads guilty does not have an unfettered right to appeal. Our rules require that before a guilty or nolo contendere plea is accepted, a judge in a Florida court must determine that the defendant understands that "if the defendant pleads guilty, or nolo contendere without express reservation of the right to appeal, he or she gives up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence, but does not impair the right to review by appropriate collateral attack..." (Emphasis supplied). Fla. R.Crim.P. 3.172(c)(4).
In Thomas v. State, 626 So.2d 1093 (Fla. 1st DCA 1993), this court affirmed the denial of a rule 3.850 claim that defense counsel was ineffective for failing to file a timely notice of appeal. The court determined that Thomas entered nolo contendere pleas to offenses in four separate cases without reserving any issue for appellate review, and the motion failed to allege what issues Thomas proposed to raise on appeal, whether and how those issues would have been dispositive, or how Thomas was prejudiced by his counsel's failure to file a notice of appeal. In a similar vein, the Second District appears to be unwilling to grant an unlimited right to a belated appeal after entry of a guilty plea, based solely on a claim that defense counsel failed to file a timely notice of appeal. See Zduniak v. State, 620 So.2d 1083 (Fla. 2d DCA 1993); Bridges v. Dugger, 518 So.2d 298 (Fla. 2d DCA 1987). The third district is of a similar view. See Gonzalez v. State, 685 So.2d 975 (Fla. 3d DCA 1997).
This court's rationale in Thomas is a proper application of the supreme court's pronouncement in Robinson. To demonstrate entitlement to a belated appeal, appellant in this case merely alleged that he requested his counsel to file an appeal on his behalf, but counsel refused to do so. Appellant entered an unconditional plea of guilty to two of the counts charged in a multi-count information, without reserving any issue for appeal. Further, the trial court in this case attached portions of the record which indicate the voluntariness of the plea, and the state's compliance with the plea bargain. Since appellant has not alleged, or otherwise indicated the existence of, any of the limited class of issues which are the proper subject of an appeal after entry of a guilty plea, and the attached portions of the record do not suggest the existence of any such issue, the trial court's denial of post-conviction relief should be affirmed.
The majority says that the Thomas case is inconsistent with a substantial body of case law. Not so. In the broad sense, some of the cases cited may appear to conflict, because some just state without elaboration, that an attorney's failure to take an appeal when requested to do so gives rise to a belated appeal. As a general proposition that is true. Most appeals arise from contested proceedings. But an appeal after a plea is different. Not one of those cases says that an attorney, an officer of the court, is ineffective for not taking an appeal when his client has waived appeal by pleading guilty, and there is no Robinson issue. If the cases so stated, they would be in conflict with Robinson.
Yes, there are decisions issued even by this court which hold generally that a post-conviction motion makes a facially sufficient showing of entitlement to the relief requested, if the motion alleges that defense counsel failed to honor the defendant's timely request for an appeal. See, e.g., Moore v. State, 661 So.2d 921, 922 (Fla. 1st DCA 1995); Kiser v. State, 649 So.2d 333, 334 (Fla. 1st DCA 1995); Owens v. State, 643 So.2d 105, 106 (Fla. 1st DCA 1994); Clayton v. State, 635 So.2d 48 (Fla. 1st DCA 1994); Hudson v. State, 596 So.2d 1213 (Fla. 1st DCA 1992); Short v. State, 596 So.2d 502 (Fla. 1st DCA 1992). However, again, those cases do not address the effect that a plea of guilty has upon the taking of an appeal.
*341 In the majority opinion, Judge Ervin relies upon two Florida Supreme Court cases, Baggett v. Wainwright, 229 So.2d 239 (Fla.1969), writ discharged, 235 So.2d 486 (Fla.1970), and State v. District Court of Appeal, First District, 569 So.2d 439 (Fla.1990), and a United States Supreme Court case, Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). None of those cases involve the situation before us where the defendant entered an unconditional plea of guilty and later, after the appeal time had run, alleged in a postconviction motion that his counsel had failed to take an appeal. Consequently, none of the three cases deal with the requirements set forth by the Florida Supreme Court in Robinson for taking an appeal when a plea of guilty is entered.
The majority also cites to Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for the proposition that there should not be disparate treatment between indigent and wealthy defendants. Without question, this is a correct statement of the law. However, that has nothing to do with Trowell. Just like a wealthy man, Trowell had counsel to help him with his trial, and to take an appeal if grounds for an appeal existed. He does not have the right to take a groundless appeal. A millionaire has no greater rights than Trowell, no matter how many lawyers he or she can afford to hire.
Accordingly, the order on appeal should be affirmed. The affirmance should be without prejudice to appellant's right to file, pursuant to recently adopted Florida Rule of Appellate Procedure 9.140(j), a petition which states that one or more of the four issues set out in Robinson will be raised in the appeal. If he does that, he is entitled to an appeal. If he does not do that, he simply should not be allowed to appeal. Anything less is simply an unjustified waste of resources by an already over-extended and unnecessarily complex criminal justice system.
MINER, Judge, dissenting.
I join Judge Joanos in dissent and write separately only to emphasize the reasons why I believe the majority opinion misses the mark in dealing with what I see as the only question presented in this appeal, i.e., whether under the facts of this case the appellant, Ronald Trowell, who pleaded guilty pursuant to a negotiated disposition of his criminal case is entitled to a belated appeal because the assistant public defender appointed to represent him on the subject criminal charges did not file a notice of appeal from the judgment of conviction and sentence resulting from Trowell's guilty plea despite Trowell's direction that he do so?
In answering this question in the affirmative, the majority opinion takes no note of the clear legal distinction between a negotiated plea of guilty and a finding of guilt by a jury after trial and attempts to frame the issues to be decided in terms of appellant's financial status rather than his confession in open court that he committed two of the offenses with which he then stood charged. In arriving at what I believe to be the correct disposition of the instant appeal, a short recitation of the underlying facts taken from the record on appeal seems appropriate.
On March 8, 1991, Jeannie Trowell requested and received a restraining order against her husband, Ronald Trowell, based upon her sworn complaint that he had threatened her and physically abused her and their minor children. On the same day, Mrs. Trowell and her children were at the home of her mother, Esther North, when Ronald Trowell entered the home armed with a shotgun, pointed the shotgun at Mrs. North and one of her sons, threatened to kill them, and then forced his wife and children to accompany him at gun point. Law enforcement authorities were notified of this event, and a search ensued for the Trowells.
When Mrs. Trowell was subsequently contacted by law enforcement officers, she told them that she had changed her mind about leaving her husband and wanted the restraining order withdrawn. Her request was reduced to writing but was rejected by a circuit judge. All the while, local law enforcement agencies continued to investigate what was treated as an armed burglary and armed assaults committed at the residence of Mrs. North.
*342 On March 14, 1991, Ronald Trowell and his wife were visiting at his mother's home. He directed Jeannie Trowell to telephone her mother (Esther North) and beg her to drop any charges against him arising from the March 8 incident at the North residence. When Jeannie Trowell refused to do so, Ronald Trowell began beating her with his fists in the living room of his mother's home, causing her to flee into a bedroom, lock the door and brace herself against the door in order to avoid his attack. During this incident, Ronald Trowell's mother fled from the home in panic leaving only Ronald and Jeannie behind.
Ronald Trowell fired a round from his shotgun at the door behind which Mrs. Trowell was hiding to disable the locking mechanism. Some of the shotgun pellets passed through the door and into Jeannie Trowell's right leg, breaking it and causing her to fall to the floor. Ronald Trowell stepped through the doorway and shot her a second time. That shotgun blast grazed her chest and grievously injured her right arm. Ronald Trowell then chambered a third round into the breech and followed Jeannie Trowell as she was dragging herself down the hallway trying to escape. Standing over her, he aimed the shotgun at the back of her head and pulled the trigger, killing her instantly.
Ronald Trowell then fled to the home of his brother whom he told what he had done. His brother contacted law enforcement authorities who took Trowell into custody and seized the shotgun he used to kill his wife. Trowell was subsequently indicted by a grand jury for first degree murder, burglary and assault, burglary while armed (arising from the March 8, 1991, incident at the home of Jeannie Trowell's mother), two counts of aggravated assault, armed extortion, and shooting within an occupied dwelling.
Some eighteen months after Jeannie Trowell's tragic death, the assistant public defender assigned to represent Ronald Trowell filed Trowell's written Offer of Plea with the court wherein Trowell agreed to plead guilty to first degree murder and armed burglary in exchange for a life sentence with a twenty-five year minimum mandatory term and a concurrent thirty-year sentence with a three-year minimum mandatory term on the armed burglary charge. For its part, the State agreed to nolle prosse all remaining charges in the indictment. At a hearing on Trowell's Offer of Plea, the trial judge, after an extensive colloquy with Trowell, accepted his offer and, as bargained, adjudicated and sentenced him accordingly. The State also nolle prossed all remaining charges as it had agreed to do.
Sometime after appellant was transported to the Reception and Medical Center (Lake Butler) of the Department of Corrections, he filed a pro se notice of appeal which this court dismissed as untimely without prejudice to his seeking relief by way of a motion under Fla. R.Crim. P. 3.850. Trowell filed such a motion in which he alleged:
1. That his assistant public defender failed to call witnesses to testify in his behalf prior to entry of the plea even though he requested that counsel do so.
2. That he was under the influence of medication when he entered his plea and his counsel did not object to the entry of the plea under the circumstances, and
3. That he was entitled to a belated appeal because his attorney was ineffective for failing to file a notice of appeal at Trowell's request.
The trial court denied the requested relief finding that issue 1 was legally insufficient on its face, issue 2 was belied by the record, and finally that Trowell was not entitled to a belated appeal based upon the "uniqueness of the facts of this case...." From this order denying relief, Trowell, acting pro se, filed this appeal.
The majority opinion finds that the first two grounds for relief asserted in Trowell's 3.850 motion are legally insufficient to state a basis for relief. I am in complete accord with this conclusion and, to that extent, I concur in the majority opinion. My disagreement with the majority stems, in part, from what I believe to be its unwarranted refusal to accept that, for appeal purposes, there is a marked difference between a confession of guilt made in open court by one charged with a crime and a finding of guilt by jury after trial.
*343 Section 924.06(3)[6], Florida Statutes (1991), provides that a defendant who pleads guilty has no right to a direct appeal. In Robinson v. State, 373 So.2d 898 (Fla.1979), the Florida Supreme Court rejected the defendant's claim therein that this statute denied indigent defendants equal protection of the law "because the statute makes collateral attack on the guilty plea the initial means of review and thereby allegedly infringes on the right to a direct appeal with the assistance of counsel." Id. at 901. The court stated that "a plea of guilty cuts off any right to an appeal from court rulings that preceded the plea in the criminal process including independent claims relating to deprivations of constitutional rights that occur prior to the entry of the guilty plea" and flatly rejected the notion that a defendant is entitled to an automatic review from a guilty plea. Id. at 902.
The court emphasized that only four issues for appeal are available to a defendant who pleads guilty: (1) subject matter jurisdiction, (2) sentence illegality, (3) failure of the State to abide by the plea agreement, and (4) the voluntary and intelligent character of the plea. In fact, the third ground is actually included in the fourth ground, voluntariness of the plea. See Tillman v. State, 522 So.2d 14, 16 (Fla.1988)("A defendant agrees to plead guilty based specifically on the agreement he or she has made with the State. Any breach of that agreement by the State renders the plea involuntary, as the plea is based on an agreement that was not fulfilled."). The Supreme Court further limited even these grounds for appeal when it found "that an appeal from a guilty plea should never be a substitute for a motion to withdraw a plea" and that a defendant must first present the issue of the voluntary and intelligent character of the plea "to the trial court in accordance with the law and standards pertaining to a motion to withdraw a plea." Id. at 902.
Thus, a defendant who pleads guilty to a criminal offense cannot appeal the voluntariness of his plea without first having filed a motion to withdraw the plea. E.g., Smith v. State, 465 So.2d 573 (Fla. 4th DCA 1985); Massey v. State, 417 So.2d 1162 (Fla. 1st DCA 1982). However, a defendant may file a motion for collateral relief pursuant to Fla. R.Crim. P. 3.850 that raises the issue of the voluntary and intelligent character of the guilty plea. Robinson, 373 So.2d at 903.
Each of the issues that a defendant who pleads guilty may raise on direct appeal may be raised in a collateral motion pursuant to Fla. R.Crim. P. 3.850 or 3.800. A different situation obtains however in the case of a defendant appealing from a guilty verdict. It is well established in our law that a defendant appealing from a verdict of guilty after a jury trial is prohibited from filing a collateral attack on issues that could have been or were raised on direct appeal. Parker v. State, 611 So.2d 1224, 1226 (Fla.1992) ("We have repeatedly said that a motion under Rule 3.850 cannot be used for a second appeal to consider issues that either were raised in the initial appeal or could have been raised in that appeal.") Such a defendant's direct appeal, however, is not statutorily denied; nor has the judiciary, to my knowledge, pronounced "an exclusive and limited class of issues" that a defendant convicted by a jury may appeal as it did for appeals from guilty pleas in Robinson.
Despite these significant differences in regard to the rights of direct appeal and collateral relief based on whether they ensue from a guilty plea or a jury verdict, the majority equates the two based on the Supreme Court's ruling in Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), which, in my view, provides no support for this position. The defendant in Rodriquez alleged that, following his trial, he told *344 his counsel to file an appeal, but that counsel failed to comply. In rejecting the Ninth Circuit's requirement that petitioners such as Rodriguez seeking a belated appeal "disclose what errors they would raise on appeal and demonstrate the denial of an appeal had caused prejudice," the court stated that such petitioners "may not even be aware of error which occurred at trial" and
thus would be deprived of their only chance to take an appeal even though they never had the assistance of counsel in preparing one. Like the approach rejected long ago in Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), the Ninth Circuit's requirement makes an indigent defendant face `the danger of conviction because he does not know how to establish his innocence.' Rodriquez, 395 U.S. at 330, 89 S.Ct. at 1717.
The Court's focus on the fact that Rodriguez was seeking an appeal following a jury trial and its comparison to the hardship facing a defendant reviewing a trial record in search of error without benefit of counsel has no applicability to the case in hand. First, a defendant appealing from a guilty plea does not have an entire trial record to review, nor is he or she allowed even to try to establish innocence. Such defendant is statutorily prohibited from raising issues that precede the guilty plea. Second, the Court in Rodriquez was concerned with a defendant's right to counsel in preparing a direct appeal. Such concern is inapposite in a case such as this one, where a defendant has no right to a direct appeal under the express provisions of Florida law. Neither Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), nor Rodriquez, both of which involved direct appeals following jury trials, purports to confer a right to appeal where none exists. It is illogical to put the cart before the horse by lamenting that the defendant in the instant case was deprived of his right to counsel on appeal when he had no right to appeal in the first place.
Unlike appeals from a guilty verdict, the issues an appellant may raise on direct appeal are "an exclusive and limited class of issues," each of which is equally cognizable in a claim for collateral relief. The trial court in the instant case required that appellant, in requesting a belated appeal following his guilty plea, allege an issue cognizable on direct appeal and demonstrate prejudice from not having it raised in a direct appeal. It seems to me that this requirement is no more restrictive for a defendant seeking a belated appeal following a guilty plea than is appropriate.
The case of Baggett v. Wainwright, 229 So.2d 239 (Fla.1970), on which the majority relies to contradict such a requirement is distinguishable. First, according to the majority, the court in Baggett was concerned with a defendant's "right to a belated appeal from a criminal conviction." The facts of Baggett reinforce that Baggett sought to vindicate his right to appeal following his conviction by a jury. At the risk of being redundant, I reiterate that a defendant who has pled guilty cannot attack his conviction; he is prohibited by statute from doing so.
In addition, Baggett, in reliance on Rodriquez, rejected the position that entitlement to a belated appeal was dependent on a defendant's showing at least arguable reversible error. Both Baggett and Rodriquez concerned the plight of a defendant reviewing a trial record for reversible error when that defendant has an unfettered right to direct appeal. I agree that insisting on such a showing in a case where a defendant has such a right is error, but, as explained above, that is not the case we have before us. Finally, in this case, I believe that requiring appellant to identify a ground over which this court has jurisdiction following a guilty plea and which serves as a basis for an appeal should not be equated with requiring a defendant to state a meritorious claim.
The record before us does not reflect and Trowell does not contend that he requested his counsel to move to withdraw his plea then so recently entered. This is understandable, perhaps, when one considers the particularly egregious circumstances surrounding Jeannie Trowell's murder and the fact that the plea negotiated by Trowell's attorney over some eighteen months may well have saved Trowell from the electric chair. Since Trowell did not move to withdraw his plea, any claim that his plea was not voluntarily and intelligently *345 made becomes non-appealable. Under Robinson, he is thus left with only two direct appeal issues, sentence illegality and subject matter jurisdiction, which, under the instant facts, he neither can nor does argue.
Even more troubling than the majority's failure to distinguish between a guilty plea and a jury verdict is the premise on which the majority disposes of this casethat failure of counsel for an accused who has pleaded guilty under a negotiated disposition of a criminal offense to file a notice of appeal when directed to do so, in and of itself amounts to ineffective assistance of counsel entitling the guilty pleading defendant to a belated appeal. To such a proposition, one might reasonably ask, "If there is no entitlement to a direct appeal, how can counsel be labeled ineffective for not filing a notice of appeal as to issues which cannot, by law, be appealed?"
More to the point is the question the majority should have but does not address: If a guilty-pleading defendant is not entitled to a direct appeal, how can he be entitled to a belated direct appeal? One need go no further than Robinson for edification. Simply put, there is, in Florida, no right of review for one who pleads guilty absent "a specific assertion of wrong doing." Counsel for guilty-pleading defendants are admonished that "[a]ttorneys have a responsibility to ensure that our system of justice functions properly" and that "[t]here is clearly no authority to seek an appellate review upon unknown or unidentified grounds, and it is improper to appeal on grounds known to be non-appealable." Robinson, 373 So.2d at 903 (emphasis added).
In the record before us, Trowell asserts that when he told his attorney to file a notice of appeal from the judgment and sentence imposed upon him, his attorney told him in so many words that there was nothing he could appeal under the circumstances. His attorney spoke the truth, and I am not prepared to brand an attorney as ineffective because he declined to do something condemned by a unanimous Florida Supreme Court as improper. Consequently, I would affirm the trial court in all respects.
WOLF, Judge, dissenting.
In State v. Leroux, 689 So.2d 235 (Fla. 1996), the court took the first step in holding that there is no legal significance in the plea colloquy; the majority opinion in this case takes the second step. Under the majority's reasoning, we may as well strike the language contained in rule 3.172(c)(4), Florida Rules of Criminal Procedure, which requires the court to inquire whether the defendant understands that "he or she gives up the right to appeal" by entering a plea. I concur in all respects with the dissents of Judge Joanos and Judge Miner.
KAHN, Judge, dissenting.
I agree completely with the legal analyses contained in the separate dissenting opinions of Judge Joanos and Judge Miner. I write separately because I do not believe that the majority's attempt to characterize the issue in terms of rich defendants versus poor defendants can go unchallenged. Slip Op. 335-336, 337. This case has nothing whatsoever to do with the financial means available to Mr. Trowell. The fact of the matter is that under our system in Florida, indigent defendants are often able to enjoy the benefit of a full-blown appeal in cases where their non-indigent counterparts might not be so fortunate.[7] This is so because once a defendant qualifies for assistance from the public defender's office, he or she is entitled to that assistance through the trial and through one appeal as of right. The non-indigent defendant must make an economic choice at every stage along the proceedings concerning whether the cost of carrying the fight one step further is worth the potential benefit. This is particularly true of working men and women in our state who must make very difficult choices concerning expenditure of their hard-earned monies in situations where *346 they or their children have legal problems. The average working person, forced to expend funds in such an instance, must defer, or forego entirely, other use of those funds, even where monies have been saved over years for a particular purpose, such as retirement or a child's college education. The indigent defendant faces no such choice in our system. This person is provided free and competent counsel by the government irrespective of the merits of the claims and defenses he or she wishes to assert either before the trial court or on direct appeal. In its use of the altogether inappropriate vernacular of class struggle, the majority opinion is an affront to working men and women who pay taxes and must, on a daily basis, make difficult choices about how to spend their hard-earned money.
NOTES
[1] In 1990, the supreme court altered this practice by requiring that a 3.850 motion be filed before the trial court. State v. District Ct. of App., First Dist., 569 So.2d 439, 442 (Fla.1990). The procedure set forth in Baggett, however, has been reinstated effective January 1, 1997. See Fla. R.App. P. 9.140(j)(1); Amendments to Fla. Rules of Appellate Proc., 685 So.2d 773 (Fla. 1996) (on reh'g).
[2] The second requirement has since been eliminated. See State v. District Ct. of App., First Dist.; State v. Meyer, 430 So.2d 440 (Fla.1983); Joseph v. State, 451 So.2d 886 (Fla. 5th DCA 1984).
[3] Although Bridges does not actually cite Robinson, it relies on case law that does.
[4] In his dissenting opinion, Judge Joanos refers to Florida Rule of Criminal Procedure 3.172(c)(4) to support his position that a defendant who pleads guilty does not have an unfettered right to appeal. This rule addresses the judge's voluntariness determination and does not preclude a defendant from appealing the issues set forth in Robinson.
[5] This is consistent with the procedure this court articulated in Stone v. State, 688 So.2d 1006 (Fla. 1st DCA) (on motion to dismiss), review denied, 697 So.2d 512 (Fla.1997), which is required when reviewing an appeal under Anders following a guilty or nolo plea. This court denied the state's motion to dismiss the appeal on the ground that the defendant had failed to reserve a Robinson issue below, holding that such failure may require dismissal on appeal, but not dismissal before appeal.

Upon the completion of briefing, we will examine the briefs and the record to determine whether a Robinson issue exists. If we reach a negative conclusion, we will dismiss the appeal with a citation to Robinson. If we conclude that such an issue does exist, we will then determine whether the issue has been preserved. If it has, we will address the merits. If it has not, we will affirm without reaching the merits.
Id. at 1008. Accord Miller v. State, 697 So.2d 586 (Fla. 1st DCA 1997) (applying Stone ).
[6] This section provided as follows: "A defendant who pleads guilty or nolo contendere with no express reservation of the right to appeal shall have no right to a direct appeal. Such a defendant shall obtain review by means of collateral attack." This section was amended in 1996, but in regard to a defendant's lack of a right to direct appeal, it remains substantively the same. Section 924.06(3) now provides the following: "A defendant who pleads guilty with no express reservation of the right to appeal a legally dispositive issue ... shall have no right to direct appeal." See § 924.051(4), Fla. Stat. (Supp.1996); Amendments to the Florida Rules of Appellate Procedure, 685 So.2d 773 (Fla.1996).
[7] In another appearance before this court, Mr. Trowell successfully obtained reversal of a permanent restraining order entered against him in response to a domestic violence petition filed by a former wife (not the one he murdered). Trowell v. Meads, 618 So.2d 351 (Fla. 1st DCA 1993). In that case, Mr. Trowell had the assistance of free counsel provided by legal services. The hapless former wife, who saw her injunction dissolved, had no counsel.